UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Min Kyoung Kim,<br><br>                        Plaintiff,<br>v.<br><br>LG H&H USA, INC., and NEW AVON COMPANY dba The Avon Company,<br><br>                       Defendants, | Index No. 25-cv-00557<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Min Kyoung Kim ("Plaintiff"), by and through his undersigned counsel, as and for his Complaint in this action against LG H&H USA, INC., and NEW AVON COMPANY dba The Avon Company (collectively "Defendants"), alleges as follows:

## I. Introduction

1. Plaintiff has initiated this action against Defendants for violations of Title VII of the Civil Rights Acts of 1964 ("Title VII" – 42 U.S.C. Section 2000e *et seq*) and the Executive Law of the State of New York, New York State Human Rights Law (the "Executive Law" or "NYSHRL"), Section 296, et seq., and the Administrative Code of the City of New York, New York City Human Rights Law (the "Administrative Code" or "NYCHRL"), Section 8-101, et seq. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## II. Jurisdiction and Venue

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title

VII. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

4. Plaintiff is proceeding herein (in part) under Title VII and have properly exhausted his administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

### III.     Parties

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff Min Kyoung Kim is a Canadian-Korean whose national origin stems from Canada.

7. Defendants offered Plaintiff to work as a Senior Manager, Retail Supply Chain on September 28, 2022 and Plaintiff started working for Defendants on January 3, 2023.

8. New Avon Company (defendant "Avon") was acquired by LG Household & Health Care (defendant "LG H&H") in 2019.

9. Before LG H&H acquired Avon in 2019, Avon operated under the entity name "New Avon LLC."

10. After the acquisition in 2019, Avon began operating its business under the name "The Avon Company" and continues to do so today.

11. Avon currently operates as a subsidiary of LG H&H, managing and operating its business within the North American region.

12. LG H&H is a subsidiary of LG Household & Health Care Ltd. ("LG H&H Ltd"), a leading South Korean company established in 2001 that specializes in cosmetics, household products, and beverages.

13. LG H&H and Avon share their headquarters and/or principal executive office at ONE LIBERTY PLAZA, 165 Broadway, New York, NY, United States 10006.

14. Defendants' New York office serves as their North American headquarter, overseeing corporate operations, strategic planning, and administrative functions.

15. Defendants operate a regional office in Los Angeles at 515 Shatto Place, Los Angeles, CA, 90020.

16. Defendants' regional office in LA functions primarily as an experience center and retail space.

17. Defendants hires Korean-American or Canadian-Korean employees across North America, while LG H&H Ltd dispatches a select number of expatriate employees to Defendants.

18. All of Defendants' expatriate employees are of Korean national origin, rather than from the United States, Canada or other countries within the North America.

19. Defendants are composed of multiple departments, including Marketing/Sales, Finance, Human Resources ("HR"), Supply Chain Management ("SCM"), and Research and Development ("R&D").

20. Plaintiff worked in the SCM department.

21. Mr. Woo-Young Chung is Defendants' marketing director, an expatriate employee whose national origin stems from South Korea.

22. Mr. Ji-Suk Yoo is Defendants' marketing director, an expatriate employee whose national origin stems from South Korea.

23. Mr. Bum-Seok Suh is Defendants' Chief Financial Officer ("CFO"), an expatriate employee whose national origin stems from South Korea.

24. Ms. Jung-Ae Lee is Defendants' Global Chief Executive Officer ("Global CEO"), an expatriate employee whose national origin stems from South Korea.

25. Mr. Do-Yeop Noh is Defendants' Global Chief Human Resources Officer ("Global CHO"), an expatriate employee whose national origin stems from South Korea.

26. Ms. Hyeyoung Moon is Defendants' North American Chief Executive Officer ("NA CEO"), an expatriate employee whose national origin stems from South Korea.

27. Mr. Young Hoon Yoo is Defendants' North American Chief Human Resources Officer ("NA CHO"), an expatriate employee whose national origin stems from South Korea.

28. At all times relevant herein, Defendants acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of its employment with and for the benefit of Defendants.

### IV. Factual Allegations

29. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30. Throughout his career, Plaintiff received multiple promotions, including advancement from Team Leader in the Retail Division to General Manager of Supply Chain for the Retail

Division in May 2023, with an additional subsidiary division added to his responsibilities in December 2023.

31. Despite his multiple promotions, Plaintiff's wage and benefits were never adjusted after the promotions.

32. The only difference between Plaintiff's role before and after the promotion was the assignment of increased workload and responsibilities, including direct reporting to Defendants' North American President.

33. However, expatriate employees' wages and benefits were adjusted immediately after their promotions.

34. Since December 2023, Defendants have begun requiring marketing and sales employees to relocate to its regional office in Los Angeles.

35. Defendants' expatriate employees consistently reflected their hatred for transferring to Defendants' LA regional office, viewing the duties there as inferior to those at Avon's NY headquarters.

36. Consequently, no expatriate employees, with only one exception, moved to the LA regional office, leading Defendants to begin transferring employees from departments other than marketing and sales, contrary to their original plan.

37. Among all employees from departments other than marketing and sales, Defendants began transferring only non-expatriate employees to Avon's LA regional office.

38. In December 2023, Defendants requested that Plaintiff report to their LA regional office for over 50 out of 80 days between January and March 2024, despite Plaintiff's lease in New York running through the end of March 2024.

39. During this three-month period, when Plaintiff had to report extensively to Defendants' LA regional office, Defendants' expatriate executive officers effectively pressured him to move permanently to LA.

40. Specifically, in the week of January 15, 2024, during Global CEO Ms. Jung-Ae Lee's first visit to the LA regional office, Ms. Lee and NA CEO Ms. Hyeyoung Moon openly announced and confirmed that Defendants would relocate Plaintiff from NY to LA in the presence of numerous managerial expatriate employees.

41. Plaintiff reluctantly complied with Defendants' relocation request, but immediately after signing a lease at 540 Rossmore Avenue, Los Angeles, CA 90004, Defendants suddenly terminated Plaintiff's position.

42. Plaintiff's termination was sudden and unexpected, especially considering he had earned an incentive bonus in October 2023 due to his excellent performance.

43. During Plaintiff's employment, Defendants repeatedly favored expatriate employees over non-expatriate employees in a discriminatory manner with Plaintiff witnessing multiple instances of such discrimination. For example:

    (a) Defendants' HR did not take meaningful action when non-expatriate employees reported workplace disputes yet promptly acted against non-expatriate employees whenever expatriate employees reported any disputes within the workplace including Plaintiff's case.

    (b) Avon's CFO, Bum-Seok Suh, an expatriate, openly mocked non-expatriate employee Kathy Paguay's name, comparing it to a similar-sounding Korean

slang term for sexual intercourse, stating, "What kind of name is that? Whether it's Pagwa or Fuck, can we not get rid of her this time?"

(c) Avon's NA CHO, Young Hoon Yoo, an expatriate, took no corrective action after witnessing CFO Bum-Seok Suh's inappropriate remark. Mr. Yoo disregarded the incident, as the comment was made by an expatriate employee toward a non-expatriate employee.

(d) Mr. Woo-Young Chung, an expatriate director at Avon, consistently defamed non-expatriate employees, openly stating during work hours and in the workplace that "local hires are not good enough" and "local hires are difficult to work with because of their poor work skills."

(e) On February 1, 2024, during Avon's happy hour at a Korean Restaurant in New Jersey, Mr. Woo-Young Chung publicly disparaged Plaintiff by stating that Plaintiff is "trying to be an expatriate" and remarking, "it's amazing how a local hire like [Plaintiff] talk even more like an expatriate than an actual expatriate would."

(f) During happy hour on February 1, 2024, another expatriate director, Mr. Ji-Suk Yoo, publicly yelled that "[non-expatriate employees like Plaintiff are] weird and tactless," mocking non-expatriate employees for not complying with expatriate employees' requests.

(g) During Supply Chain Management Organizational Review on April 13, 2023, Avon's CFO Bum-Suk Suh and CHO Young-Hoon Yoo remarked multiple disparaging remarks on non-expatriate employees. For example:

a. "[non-expatriate employee] can't do their jobs but only take up seats. Fire all of them. We have to cut the workforce in half before returning in order to save face. [Non-expatriate employees] cost too much because they get paid for doing a poor job."

b. "It has been difficult to fire the [non-expatriate employees] because Paul Cali (former SCM non-expatriate Executive Director) threw a fit. [Expatriate employee's] hands were tied because [Paul Cali] did nothing but took salary like a parasite and objected to everything. Now that we got rid of Paul, we just have to get rid of all the rest [of expatriate employees.]"

c. "We have been spending a lot of money to maintain the system because [the non-expatriate employees] threw a fit and insisted that they needed all the system while not doing any work. We will totally wipe out the system as well this time."

(h) During the June 7, 2023, meeting on demand for new Korean-manufactured products, Mr. Woo-Young Chung publicly instructed non-expatriate employees to comply with expatriate directives without raising concerns or opinions, stating, "Just do what HQ says. It doesn't call for [non-expatriate employees'] opinions."

44. As a result of foregoing, Plaintiff filed a complaint of discrimination with the EEOC on or about November 18, 2024.

45. Plaintiff's EEOC Charges of Discrimination were sent to Defendants.

46. Plaintiff believes and therefore aver that he was subjected to a hostile work environment and less treated favorably and wrongfully terminated because of his national origin.

## Count I
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### [1] National Origin Discrimination

47. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

48. Defendants' conduct as alleged at length herein deprived Plaintiff of equal employment opportunities and otherwise adversely affected his status as an employee because of his national origin.

49. During the entire period of Plaintiff's employment, Defendants engaged in discrimination based on national origin, treating Plaintiff less favorably than similarly situated employees who were not Canadian-Korean, in violation of Title VII of the Civil Rights Act of 1964.

50. Plaintiff would not have been subjected to discriminatory treatment by Defendants but for his national origin.

51. Defendants' unlawful employment practices were conducted intentionally, with malice or with reckless indifference to Plaintiff's federally protected rights.

## Count II
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### [2] Hostile Work Environment

52. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

53. The hostile work environment created by Defendants' discriminations and disparate treatments based on Plaintiff's national origin were severe and/or pervasive and violated Plaintiff's right under Title VII.

54. As a direct result of the hostile work environment that existed during Plaintiff's employment with Defendants, Plaintiff sustained conscious pain and suffering, great mental distress, shock, fright and humiliation.

## Count III
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### [3] Wrongful Termination

55. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

56. Plaintiff was terminated by Defendants on March 16, 2024.

57. Defendants consistently defamed and stated that non-expatriate employees like Plaintiff should be terminated, claiming they are a waste of resources and that expatriate employees are superior.

58. Upon information and belief, Defendants have willfully and intentionally terminated Plaintiff's position at Avon because of Plaintiff's national origin.

59. As a direct result of the wrongful termination, Plaintiff sustained substantial harm including but not limited to:

    (a) Financial harm from relocating from New York to Los Angeles and legal costs associated with obtaining a green card to work for Defendants in the United States;

(b) Lost wages and benefits including back pay and front pay;

(c) Reputational harm that made Plaintiff difficult to find new employment at a comparable level;

(d) Relocation expenses incurred for relocation from New York to Los Angeles and legal costs associated with obtaining a green card to work for Defendants in the US; and

(e) Lost job benefits including but not limited to healthcare, retirement, contributions, or stock options.

**Count IV**
**Violations of New York State Human Rights Law ("NYSHRL") § 296, et seq.**
**([1] National Origin Discrimination; [2] Hostile Work Environment; [3] Wrongful Termination)**

60. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

61. Plaintiff re-asserts and re-alleges each and every allegation as set forth in COUNT I through COUNT III of the instant Civil Action Complaint, as such actions constitute violations of the NYSHRL under its more lenient standards for proving discrimination.

**Count V**
**Violations of the New York City Human Rights Law ("NYCHRL") § 8-107, et seq**
**([1] National Origin Discrimination, [2] Hostile Work Environment; [3] Wrongful Termination)**

62. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

63. Plaintiff re-asserts and re-alleges each and every allegation as set forth in COUNT I through COUNT III of the instant Civil Action Complaint, as such actions constitute violations of the NYCHRL which provides even more lenient standard for proving discrimination than both Title VII and NYSHRL.

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

a. Defendants are to be prohibited from continuing to maintain its illegal policy, practice, or custom(s) of discriminating non-expatriate employees, fostering a hostile work environment, or wrongfully terminating non-expatriate employees. Defendants shall also be ordered to promulgate and enforce an effective policy against such discrimination, hostile work conditions, and wrongful termination, ensuring strict adherence moving forward.

b. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay (absent reinstatement), salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered the aforesaid unlawful actions at the hands of Defendants until the date of verdict;

c. Plaintiff is to be awarded punitive or liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for its willful, deliberate, malicious and outrageous conduct, and to deter Defendants or other employers from engaging in such misconduct in the future;

d. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress and pain and suffering);

   e. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

   f. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues.

Dated: February 3, 2025

/s/ Ryan Kim
Ryan J. Kim

Ryan J. Kim, Esq.
Ryan Kim Law, P.C.
222 Bruce Reynolds Blvd. Suite 490
Fort Lee, NJ 07024
ryan@RyanKimLaw.com