UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

MIN KYOUNG KIM,

                Plaintiff,

        -v-

LG H&H USA, INC, NEW AVON COMPANY,

                Defendants.

-----------------------------------------------------------------------X

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED:  04/04/2025__ |

25-cv-557 (LJL)

<u>OPINION AND ORDER</u>

LEWIS J. LIMAN, United States District Judge:

      Defendants LG H&H USA, Inc. ("LG") and New Avon Company ("Avon" and with LG, "Defendants") move, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, to compel arbitration. Dkt. No. 11.  LG also moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint against it for failure to state a claim for relief.  *Id.*

      For the following reasons, the motion to compel arbitration is granted.

## BACKGROUND

### I.    Allegations of the Complaint

      The Court accepts the allegations of the First Amended Complaint as true for purposes of the motion to dismiss.

      Plaintiff is an individual of Canadian-Korean descent who is of Canadian national origin. Dkt. No. 5 ¶ 6.

      LG is a subsidiary of non-party LG Household & Health Care Ltd. ("LG H&H Ltd"), a South Korean company established in 2001 that specializes in cosmetics, household projects, and beverages.  *Id.* ¶ 12.  Avon is a subsidiary of LG and was acquired by LG in 2019.  *Id.* ¶¶ 8, 11.

It operates the business of LG H&H in the North American region.  *Id.* ¶ 11.  LG and Avon share a headquarters or principal executive office in New York, New York.  *Id.* ¶ 13.

Plaintiff was employed by Defendants as Senior Manager, Retail Supply Chain, beginning on January 3, 2023.  *Id.* ¶¶ 7, 20.  He was promoted from Team Leader in the Retail Division to General Manager of Supply Chain for the Retail Division in May 2023, with an additional subsidiary division added to his responsibilities in December 2023.  *Id.* ¶ 30.   In December 2023 and January 2024, however, Defendants asked Plaintiff to relocate to Los Angeles, against Plaintiff's wishes.  *Id.* ¶¶ 38–41.  His employment was terminated immediately after he signed a lease in Los Angeles.  *Id.* ¶ 41.   Plaintiff filed a complaint of discrimination with the EEOC on or about November 18, 2024.  *Id.* ¶ 44.

He alleges that he is the victim of national origin discrimination, hostile work environment based on national origin, and wrongful termination based on national origin, in violation of Title VII of the Civil Rights Act of 1964, *id.* ¶¶ 47–59, the New York State Human Rights Law, *id.* ¶¶ 60–61, and the New York City Human Rights Law, *id.* ¶¶ 62–63.

## II.    The Arbitration Agreement

The following facts are undisputed for purposes of the motion to compel arbitration.

On September 28, 2022, Plaintiff was sent a letter offering him employment with Avon in the position of Senior Management, Retail Supply Chain.  Dkt, No. 14-8 at 1.  The offer letter contained information regarding Plaintiff's annual salary, annual incentive target bonus, start date, paid time off, and relocation allowance.  *Id.*  It also stated:

> **Pre-Employment Information**
>
> Upon receipt of your acceptance we will begin our pre-employment process.  This will include access to our onboarding portal to provide information required prior to your start date, including our Arbitration Agreement, which is a required condition of employment unless otherwise stated.

Dkt. No. 14-8 at 1.  Plaintiff signed the offer letter on September 30, 2022, accepting

employment on the terms and conditions set forth in the offer letter.  *Id.* at 2–3.

On February 20, 2023, Plaintiff reviewed and signed or acknowledged Defendant's

onboarding documents, including the Arbitration Agreement, through Avon's onboarding portal.

Dkt. No. 14 ¶¶ 20–23, 25.[1]  The Arbitration Agreement provides that:

> [A]s a condition of your employment or continued employment with Avon, you
> and Avon agree that any dispute arising from, related to, or in connection with your
> past, present, and/or future association and/or employment with Avon (except as
> outlined in Section III) must be resolved only through binding arbitration on an
> individual basis.  Arbitration pursuant to the Policy replaces the right of both the
> Team Member and the Company to go to court for claims covered by the Policy,
> including the right to have a jury decide those claims.

Dkt. No. 14-6 at 2.

It specifically states:

> By your acceptance of or continued employment with Avon, you, your heirs,
> executors, administrators, successors and assigns (collectively, "you" or "Team
> Member") and Avon agree that, except for those listed in Section III below, any
> and all past, present, or future Claims (as defined below) arising from, related to,
> or in connection with your past, present, and/or future association and/or
> employment with Avon will be submitted to binding arbitration, including those
> that Avon may have against you or that you may have against: (i) Avon, (ii) its
> subsidiaries and affiliated entities, (iii) its benefit plans or the plans' sponsors,
> fiduciaries, and administrators, (iv) its members or equity-holders, (v) any current
> or former officers, directors, employees, managers, agents, or representatives in
> their capacity as such or otherwise of the foregoing and/or (vi) all predecessors,
> successors and assigns of any of the foregoing (all of whom are express
> beneficiaries of the Policy, and collectively referred to as the "Avon Entities").

*Id.*

The Arbitration Agreement also states:

---

[1] Plaintiff alleges that he had already started work with Avon before this date, on January 3,
2023.  Dkt. No. 5 ¶ 7.  However, for purposes of the motion to compel arbitration it is undisputed
that before March 2023, Plaintiff worked for The Avon Company Canada Limited, a Canadian
affiliate of Avon.  Dkt. No. 14 ¶¶ 4, 19.  The onboarding process for Kim's new position with
Avon occurred in February 2023, and Kim began his employment with Avon on March 6, 2023.
*Id.* ¶¶ 20–30; Dkt. No. 14-4; Dkt. No. 14-5.

> [E]xcept as provided in Section III, the Policy is intended to apply to all employment related disputes of whatever nature . . . that you could file against Avon and/or the Avon Entities in court, including, for example, . . . employment classifications, hiring, termination, discrimination (including, but not limited to, . . . national origin . . . or any other characteristic protected by applicable law), harassment, retaliation, including, without limitation, any claims arising under or related to . . . Title VII of the Civil Rights Act of 1964, as amended, . . . and any other state or federal statutory and common law claims addressing the same or similar subject matters . . .

*Id.* Section III makes clear that the Policy does not prevent Plaintiff from filing a claim or charge with "any federal, state or local administrative agency such as the Equal Employment Opportunity Commission," but otherwise is not relevant to this case. *Id.* at 3–4.

After signing the Agreement on February 20, 2023, Plaintiff commenced employment with Avon on March 6, 2023. Dkt. No. 14 ¶ 30. Avon states that Plaintiff's employment was terminated on March 22, 2024, due to misconduct. *Id.* ¶ 31.

## PROCEDURAL HISTORY

Plaintiff initiated this case by complaint filed against Avon on January 20, 2025. Dkt. No. 1. On February 3, 2025, Plaintiff filed the First Amended Complaint against Defendants. Dkt. No. 5. Proof of service was filed on February 19, 2025. Dkt. No. 10.

On March 5, 2025, Defendants filed this motion to compel arbitration and, in the alternative, to dismiss the claims against LG for failure to state a claim for relief. Dkt. No. 12. Defendants also filed a memorandum of law and two declarations in support of the motion. Dkt. Nos. 13–15. Plaintiff did not respond to the motion.

## DISCUSSION

When deciding a motion to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted). On a motion for summary judgment, courts consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits," and draw all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [courts] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Id.* (citation omitted).

The "FAA compels judicial enforcement of . . . written arbitration agreements." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). Under the FAA, a "written provision in any . . . contract . . . evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Section 2 embodies [a] national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) ("Congress enacted the FAA to replace judicial indisposition to arbitration.").

Arbitration agreements stand "on equal footing with other contracts," so courts must "enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *see also Ross v. Am. Exp. Co.*, 547 F.3d 137, 143 (2d Cir. 2008) ("[T]he purpose of Congress in enacting the FAA 'was to make arbitration agreements as enforceable as other contracts, *but not more so*.'" (quoting *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) *abrogated on other grounds as recognized by Loc. Union 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 67 F.4th 107 (2d Cir. 2023))). "[A] party may be compelled to arbitrate a dispute only to the extent he or she has agreed to do so," *Moton v. Maplebear Inc.*, 2016 WL 616343, at *3 (S.D.N.Y. Feb. 9, 2016) (quoting *Nayal v. HIP Network*

*Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 569 (S.D.N.Y. 2009)), and "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements," *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Section 4 of the FAA provides that "[a]ny party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may seek "an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). As a result, "[t]he Court's role on a motion to compel arbitration is 'narrow.'" *Lonstein L. Off., P.C. v. Evanston Ins. Co.*, 2022 WL 72302, at *8 (S.D.N.Y. Jan. 6, 2022) (quoting *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 139 (3d Cir. 1998)).

> [F]irst, [the Court] must "determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration."

*Bristol v. Securitas Sec. Servs. USA, Inc.*, 597 F. Supp. 3d 574, 578 (S.D.N.Y. 2022) (quoting *JLM Indus.*, 387 F.3d at 169).

There is no dispute of fact that Plaintiff agreed to arbitrate employment disputes with Avon. The unrefuted evidence before the Court is that Plaintiff electronically signed the Arbitration Agreement. Dkt. No. 14 ¶¶ 20–23, 25. "Courts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract." *Meyer*, 868 F.3d at 75 (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–34 (7th Cir. 2016)); *see* N.Y.

Tech. Law § 304(2) ("The use of an electronic signature shall have the same validity and effect as the use of a signature affixed by hand.").  The Arbitration Agreement reflects that Plaintiff's "employment or continued employment with Avon after first receiving a copy of the Policy is consideration for your agreement to arbitrate Claims under the Policy, unless otherwise provided by applicable law."  Dkt. No. 14-6 at 5.

Plaintiff's claims all fall squarely within the scope of the Arbitration Agreement.  The Arbitration Agreement is "the paradigm of a broad arbitration agreement."  *Lonstein L. Off.*, 2022 WL 72302, at *9 (internal quotation marks omitted) (quoting *Convergen Energy LLC v. Brooks*, 2020 WL 5549039, at *16 (S.D.N.Y. Sept. 16, 2020)).  It addresses not only claims that arise from Plaintiff's employment with Avon but also those that relate to it.  "[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *FritzCo LLC v. Verizon Commc'ns Inc.*, 2022 WL 4592900, at *2 (S.D.N.Y. Sept. 30, 2022) (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)).  "Doubts should be resolved in favor of coverage."  *Id.* (quoting *WorldCrisa*, 129 F.3d at 74).  Plaintiff asserts claims for discrimination, hostile work environment and unlawful termination based on national origin discrimination under federal, state and local law.  Dkt. No. 5.  All easily fall within the terms of the Arbitration Agreement.

The third inquiry is "whether Congress intended [the] federal statutory claims asserted to be nonarbitrable."  *Gilbert v. Dell Techs., Inc.*, 415 F. Supp. 3d 389, 400 (S.D.N.Y. 2019).  The Supreme Court has held that claims under Title VII are arbitrable.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

Plaintiff's claims against LG also are arbitrable.  Plaintiff alleges that LG is the parent company of Avon.  Dkt. No. 5 ¶¶ 8, 11.  The arbitration agreement covers claims by Plaintiff against "subsidiaries and affiliated entities," and "members or equity-holders" of Avon, "all of whom are express beneficiaries of the Policy, and collectively referred to as the "Avon Entities." Dkt. No. 14-6 at 2.  As Avon's parent company, LG is an equity holder and affiliate, and thus it is an Avon Entity which is a third-party beneficiary to the Arbitration Agreement and entitled to enforce it.  *See Curtis v. JPMorgan Chase Bank, N.A.*, 2024 WL 283474, at *6 (S.D.N.Y. Jan. 25, 2024).

"[T]he Federal Arbitration Act, 9 U.S.C. § 1 *et seq*, requires a stay of proceedings when all claims are referred to arbitration and a stay requested."  *Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir.), *cert. denied*, 136 U.S. 596 (2015); *see Lonstein L. Off.*, 2022 WL 72302, at *9. Defendants have requested a stay.  Dkt. No. 13 at 18.  Accordingly, the case is stayed pending the conclusion of arbitration.[2]

## CONCLUSION

The motion to compel arbitration is GRANTED.  The case is STAYED pending the conclusion of arbitration.

The Clerk of Court is respectfully directed to close Dkt. No. 12.

SO ORDERED.

Dated: April 4, 2025
     New York, New York

_____
            LEWIS J. LIMAN
        United States District Judge

---

[2] In light of the Court's disposition of the motion to compel, the Court does not address the motion of LG to dismiss for failure to state a claim for relief.  "If the court lacks adjudicative capacity, *i.e.*, if the case belongs in arbitration, then the court should not be making substantive decisions."  *Diaz-Roa v. Hermes L., P.C.*, 2024 WL 4866450, at *17 (S.D.N.Y. Nov. 21, 2024).